James D. Holman, Esq., ISB #2547
THOMSEN HOLMAN WHEILER, PLLC
2635 Channing Way
Idaho Falls, ID  83404
Telephone  (208) 522-1230
Fax  (208) 522-1277
holman@thwlaw.com

  Attorneys for Plaintiff

IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF IDAHO

| | | |
|---|---|---|
| SHANES DAVIS, | ) | Case No. _____ |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | COMPLAINT AND |
| | ) | DEMAND FOR JURY TRIAL |
| TONY VENTURES, LLC dba | ) | |
| EXPRESSIONS VINYL.COM | ) | |
| | ) | |
| Defendant. | ) | |
| _____ | ) | |

Plaintiff Shanes Davis for cause of action against defendant Tony Ventures, LLC dba Expressions Vinyl.com hereby states and alleges as follows:

1.      This is a claim under the Americans with Disabilities Act of 1990 as amended by the ADA Amendments Act of 2008.

2.      Plaintiff Shanes Davis [hereinafter Shanes] is a resident of Bonneville County, Idaho.

3.      Defendant Tony Ventures, LLC is a limited liability company licensed and doing business in the State of Idaho, with its principal place of business in Shelley, Bingham County,

1 -     COMPLAINT AND DEMAND FOR JURY TRIAL

Idaho. Tony Ventures, LLC does business under the assumed business name of Expressions Vinyl.com.

4. This court has jurisdiction of this claim pursuant to 28 USC §1331, which is authorized and instituted pursuant to 42 USC §12117(a).

5. Defendant is an employer within the meaning of 42 USC §12111(5).

6. Shanes is a qualified individual with a disability within the meaning of 42 USC §12111(8) and 42 USC §12112(a). Shanes is and at all material times was a disabled person in that he suffers from a seizure disorder known as epilepsy.

7. Shanes has exhausted his administrative remedies before the United States Equal Employment Opportunity Commission. On May 23, 2017 the United States Equal Employment Opportunity Commission issued to Shanes a notice of right to sue. A true and correct copy of the notice of right to sue is attached hereto.

8. On August 18, 2015 Shanes applied for employment with Tony Ventures, LLC as a warehouseman. During the application interview owner Carl Tyger, Human Resources Manager Jason Geary and Manager Jesse Durstetler asked about a three year gap in Shanes' employment. Shanes explained that he had medical issues during that time and also disclosed the nature of his disability, namely epileptic seizures.

9. On August 20, 2015 Human Resources Manager Jason Geary required Shanes to perform a "demonstration" or "hands on" interview to make sure he was physically capable of performing the job of warehouseman. Shanes complied with the demonstration and within an hour Manager Jesse Durstetler told Shanes he was hired.

2 -   COMPLAINT AND DEMAND FOR JURY TRIAL

10. Shanes worked for Tony Ventures, LLC for a year and a half. He received steady pay raises and in November 2016 Tony Ventures, LLC promoted him to warehouse lead and gave him a raise in pay.

11. Shanes was at all times qualified to perform the essential functions of warehouse lead with or without reasonable accommodation.

12. In February 2017 Shanes suffered an epileptic seizure at home, at night. Shanes informed his supervisor, Jesse Durstetler, of the seizure and further informed him that he would need to take a couple of days off work. HR Director Jason Geary and direct supervisor Jesse Durstetler did not object to Shanes taking time off work.

13. On March 1, 2017 Shanes contacted Jesse Durstetler and told him that he was ready to return to work on March 2. Jesse Durstetler required Shanes to obtain a doctor's release before returning to work. Shanes went to Community Care Center and obtained a doctor's release to return to work.

14. On Wednesday, March 1, 2017 Shanes returned to his place of employment and gave Jason Geary the doctor's release to work. Shanes spoke with owner Carl Tyger and Jason Geary concerning return to work. Jason Geary and Carl Tyger told Shanes that he could return to work on Thursday, March 2.

15. While at home recovering, Shanes' daughter brought a note from a co-worker. This note established that defendant had disclosed to Shanes' co-workers the nature of his disability. Shanes considered this medical information to be personal and confidential.

3 -     COMPLAINT AND DEMAND FOR JURY TRIAL

16.     Shanes returned to work on March 2, 2017 at his normal time of 7:00 a.m.  Shanes was immediately confronted by co-workers who asked questions about his disability.  Some co-workers laughed and joked about his disability.

17.     Upon his return to work, Shanes' manager Jesse Derstetler took him off his regular job of filling orders in the "bull pen."  Rather than letting Shanes do his regular job, Jesse Derstetler put him to work at the shipping station, which Shanes considered to be a demotion.  Jesse Destetler explained that he changed Shanes' employment position because he did not want to go back into the bull pen and find him "flopping on the floor like a fish."

18.     Jesse Derstetler also moved Shanes' daughter, Kelly Clayton, from her regular job over to Shanes' department so that she could keep an eye on him.

19.     Shortly after his return to work, Jesse Derstetler called Shanes into the conference room.  There Jesse Derstetler and Jason Geary required Shanes to sign a document entitled Release and Waiver of Liability which purported to release Tony Ventures, LLC of any liability in the event that Shanes had a seizure at work.  Jason Geary and Jesse Derstetler informed Shanes that if he did not sign the Release and Waiver of Liability, he would be terminated from employment.  Because of this threat to his employment, Shanes signed the Release and Waiver of Liability.

20.     Jason Geary and Jesse Derstetler next presented Shanes with a document entitled Employee Warning Notice.  This document was a final warning for absenteeism which placed Shanes on probation for 90 days.  This document said "Full attendance will be expected.  No unexcused absences during this time.  Exception will be made for neurology follow up.  Consequences of failing to complete the requirements of probation: dismissal."  Jason Geary and Jesse Derstetler told Shanes "no unexcused absences" meant that if he missed work due to an

4 -     COMPLAINT AND DEMAND FOR JURY TRIAL

epileptic seizure within the 90 day probation period, he would be fired. Jason Geary and Jesse Derstetler informed Shanes that if he refused to sign the Employee Warning Notice, he would be terminated. Because of this threat to his employment, Shanes signed the Employee Warning Notice.

21.     Shanes then returned to work. About an hour later Jesse Derstetler informed Shanes that at the regular Thursday meeting with his crew, Jesse Derstetler would require Shanes to tell everyone on his crew about his disability. Shanes informed Jesse Dersetler that he did not want to do this as this would make him feel extremely uncomfortable and embarrassed and that his disability was really none of their business. Jesse Derstetler told Shanes that this was "too bad." At the meeting Jesse Derstetler announced to Shanes' co-workers that Shanes has a disability, and then compelled him to disclose his disability to all of those present. Jesse Derstetler also informed Shanes' co-workers that he had moved Shanes' daughter over to his department to keep an eye on him. During this meeting Human Resources Manager Jason Geary was present and watching. Even though Shanes did not want to make this disclosure, he felt he had no choice in that if he failed to comply with Jesse Derstetler's orders, his employment would be terminated.

22.     Shanes returned to work on March 3. Again Jesse Derstetler refused to allow him to do his normal job in the bull pen. Jesse Derstetler placed Shanes in shipping and asked: "You are not going to go down are you?"

23.     While Shanes was working at the shipping station, defendant required his daughter Kelly Clayton to stand nearby and watch him, even though there was nothing for her to do, the other shipping station being down due to a computer problem. Kelly Clayton was extremely upset by this.

23. Defendant's treatment of Shanes and his daughter caused Shanes to feel shame, humiliation, anger and anxiety. Shanes felt that he could no longer continue his employment with defendant and tendered his resignation on March 3.

## COUNT I
## HOSTILE WORK ENVIRONMENT

24. Plaintiff realleges the allegations set forth in paragraphs 1 through 23 as if set forth at length herein.

25. Defendant's treatment of Shanes, as set forth above, solely on account of his disability, constituted a hostile work environment such that he had no reasonable alternative other than to resign his employment.

26. Shanes' resignation from employment constitutes a constructive discharge, on account of his disability, entitling him to all remedies available under the Americans with Disabilities Act.

## COUNT II
## ALTERATION OF THE TERMS, CONDITIONS AND PRIVILEGES
## OF EMPLOYMENT

27. Plaintiff realleges the allegations set forth in paragraphs 1 through 26 as if set forth at length herein.

28. Defendant altered the terms, conditions and privileges of Shanes' employment in violation of 42 USC §12112(a) by disclosing his disability to his fellow employees; by requiring him to sign a release and waiver; by placing him on probation; by demoting him; and by assigning his daughter to watch him.

29. Defendant's treatment of Shanes, as set forth above, solely on account of his disability, altered the terms, conditions and privileges of his employment, in violation of the Americans with Disabilities Act, entitling Shanes to all remedies available under the Act.

### COUNT III
### FAILURE TO PROVIDE REASONABLE ACCOMMODATION

30. Plaintiff realleges the allegations set forth in paragraphs 1 through 29 as if set forth at length herein.

31. Defendant has failed and refused to provide to Shanes a reasonable accommodation as required by 42 USC §12112(b)(5)(A), and has failed and refused to enter into the interactive process with him.

32. By reason of said violation of the Americans with Disabilities Act, Shanes is entitled to all remedies available under the Act.

### COUNT IV
### CONSTRUCTIVE DISCHARGE

33. Plaintiff realleges the allegations set forth in paragraphs 1 through 32 as if set forth at length herein.

34. Defendant created a hostile work environment which resulted in Shanes' constructive discharge from employment. Defendant's disclosure of Shanes' disability to his co-workers subjected him to harassment and ridicule. Defendant further compelled Shanes to stand up in front of his co-workers and disclose his disability, again subjecting him to shame, embarrassment, harassment and ridicule. Shanes' immediate supervisor, Jesse Durstetler, joined in the shaming and harassment, telling Shanes on more than one occasion that he did not want to see Shanes "flopping around on the floor like a fish." Defendant compounded the hostile work environment by assigning

7 -   COMPLAINT AND DEMAND FOR JURY TRIAL

Shanes' daughter to, in effect, baby sit him. Finally, defendant compelled Shanes to sign a Release and Waiver of Liability and disciplined him, placing him on probation, for a disability over which he has no control. Shanes had no alternative to resignation inasmuch as the hostile work environment was created and fostered by owner Carl Tyger, Manager Jesse Derstetler and Human Resources Manager Jason Geary.

35. As a result of said constructive discharge, solely on account of Shanes' disability in violation of the Americans with Disabilities Act, Shanes is entitled to all remedies available under the Act.

## COUNT V
## DISCLOSURE OF CONFIDENTIAL MEDICAL INFORMATION

36. Plaintiff realleges the allegations set forth in paragraphs 1 through 35 as if set forth at length herein.

37. Defendant disclosed Shanes' disability, and compelled him to disclose his disability, in violation of 42 USC §12112(d)(3)(B).

38. As a result of said violation of the Americans with Disabilities Act, Shanes is entitled to all remedies available under the Act.

## COUNT VI
## PUNITIVE DAMAGES

39. Plaintiff realleges the allegations set forth in paragraphs 1 through 38 as if set forth at length herein.

40. Defendant's acts were done intentionally, with an improper discriminatory motive and with reckless indifference to Shanes' federally protected rights. By reason thereof Shanes is entitled to an award of punitive damages in an amount to be proven at trial.

8 -     COMPLAINT AND DEMAND FOR JURY TRIAL

## COUNT VII
## INVASION OF PRIVACY

41. Plaintiff realleges the allegations set forth in paragraphs 1 through 40 as if set forth at length herein.

42. This court has jurisdiction over this claim pursuant to 28 USC §1367(a) in that the claim set forth in this count is so related to the claims set forth in the preceding counts as to form part of the same case and controversy.

43. Defendant disclosed to Shanes' fellow employees confidential and embarrassing private medical facts concerning his epilepsy and seizures. Such disclosure constituted a violation of his right to privacy.

44. By reason of said violation of his right to privacy, Shanes is entitled to recover from defendant all damages caused by said invasion of privacy.

## COUNT VIII
## INTENTIONAL INFLICTION OF EMOTIONAL DISTRESS

45. Plaintiff realleges the allegations set forth in paragraphs 1 through 44 as if set forth at length herein.

46. This court has jurisdiction over this claim pursuant to 28 USC §1367(a) in that the claim set forth in this count is so related to the claims set forth in the preceding counts as to form part of the same case and controversy.

47. Defendant compelled Shanes, on pain of losing his job, and over his objections, to stand up before his fellow employees and disclose private and embarrassing medical information concerning his epilepsy and seizures. By compelling Shanes to make this disclosure, defendant

9 -    COMPLAINT AND DEMAND FOR JURY TRIAL

inflicted severe emotional distress on Shanes, causing him great anxiety, humiliation, shame, embarrassment and anger. Defendant's actions were intentional.

48. By reason of said intentional infliction of emotional distress, plaintiff is entitled to recover all damages from defendant caused thereby.

## COUNT NINE
## REQUEST FOR ATTORNEY FEES

49. Plaintiff realleges the allegations set forth in paragraphs 1 through 48 as if set forth at length herein.

50. Plaintiff is entitled to an award of attorney fees, expert witness fees and costs incurred herein pursuant to 42 USC §12117(a), 42 USC §12205, Idaho Code §12-120(3), Idaho Code §12-121 and any other applicable statute or court rule.

## PRAYER FOR RELIEF

WHEREFORE, plaintiff requests the court to:

1. Assume jurisdiction over plaintiff's causes of action set forth herein;

2. Order defendant to make plaintiff whole by providing compensation for non-pecuniary losses, including general damages, physical and emotional pain and suffering, and emotional distress in amounts to be determined at trial as a result of defendant's violation of the Americans with Disabilities Act, invasion of plaintiff's privacy and intentional infliction of emotional distress;

3. Order defendant to pay plaintiff punitive damages in an amount to be determined at trial;

4.	Award to plaintiff damages for lost income and benefits as back pay from the date of termination to date of trial, in an amount to be proven at trial;

5.	Award plaintiff front pay as an equitable remedy in lieu of reinstatement in an amount to be proven at trial;

6.	Award plaintiff his costs of suit and reasonable attorney fees, costs and expert witness fees pursuant to 42 USC §12117(a), 42 USC §12205, Idaho Code §12-120(3) and Idaho Code §12-121;

7.	Order defendant to pay pre-judgment and post-judgment interest on all amounts due to plaintiff as a result of this action; and

8.	Order such further or alternative relief in favor of plaintiff as the court deems appropriate.

DATED this 6th day of June, 2017.

THOMSEN HOLMAN WHEILER, PLLC

By:  /s/
James D. Holman, Esq.

## JURY TRIAL DEMAND

Plaintiff demands a jury trial on all issues triable to a jury in this matter.

DATED this 6th day of June, 2017.

THOMSEN HOLMAN WHEILER, PLLC

By:  /s/
James D. Holman, Esq.

JDH:clm
10408\PLEADINGS\001 Complaint

11 -   COMPLAINT AND DEMAND FOR JURY TRIAL